IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

STEPHANIE MITCHELL          )
                            )
v.                          )    No. 3:21-0408
                            )
KILOLO KIJAKAZI[1]          )
Commissioner of Social Security )

**To:**   The Honorable Eli J. Richardson, District Judge

## REPORT AND RECOMMENDATION

Plaintiff filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the final decision of the Social Security Administration ("Commissioner" or "Defendant") denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), as provided under Titles II and XVI, respectively, of the Social Security Act. The case is currently pending on Plaintiff's motion for judgment on the administrative record (Docket No. 23), to which Defendant has filed a response. (Docket No. 24.) Plaintiff has also filed a reply to Defendant's response. (Docket No. 25.) This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for initial consideration and a Report and Recommendation. (Docket No. 4.)

Upon review of the administrative record as a whole and consideration of the parties' filings, the undersigned Magistrate Judge respectfully recommends that Plaintiff's motion (Docket No. 23) be **DENIED**.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for former Commissioner Andrew Saul as the defendant in this lawsuit.

## I. INTRODUCTION

Plaintiff filed an application for DIB on March 16, 2018, and a separate application for SSI on August 7, 2018. (*See* Transcript of the Administrative Record (Docket No. 18) at 15).[2] She alleged in both that she was unable to work as of the alleged disability onset date of August 12, 2016, because of vision problems, irregular hormone levels, polymyalgia rheumatica, knee pain, diabetes, attention-deficit hyperactivity disorder (ADHD), bipolar disorder, anxiety, and depression. (AR 15, 85.) The applications were denied initially and upon reconsideration. (AR 84, 101.) Pursuant to her request for a hearing before an administrative law judge ("ALJ"), Plaintiff appeared and testified at a hearing before ALJ Renee Andrews-Turner on November 8, 2019. (AR 29.) The ALJ denied the claim on February 13, 2020. (AR 12-14.) The Appeals Council denied Plaintiff's request for review of the ALJ's decision on March 19, 2021 (AR 1-4), thereby making the ALJ's decision the final decision of the Commissioner. Plaintiff subsequently filed the instant action, and the Court has jurisdiction. 42 U.S.C. § 405(g).

## II. THE ALJ FINDINGS

The ALJ's unfavorable decision included the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2039.

2. The claimant has not engaged in substantial gainful activity since August 12, 2016, the alleged onset date (20 CFR 404.1571 *et seq.,* and 416.971 *et seq.*).

3. The claimant has the following severe impairments: right knee osteoarthritis, lumbar degenerative disc disease, anxiety disorder and obesity (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments

---

[2] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "AR" followed by the corresponding Bates-stamped number(s) in large black print in the bottom right corner of each page.

2

in 20 CFR part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can lift and/or carry 20 pounds occasionally and 10 pounds frequently. She can stand and/or walk for 6 hours in an 8-hour workday; sit for 6 hours in an 8-hour workday; frequently balance, stoop, kneel, crouch, crawl and climb ramps/stairs; and occasionally climb ladders/scaffolds. She can understand, remember and carry out simple and detailed multi-step instructions, but not complex instructions; and she can adapt to infrequent change in the workplace.

6. The claimant is capable of performing past relevant work as a receptionist. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from August 12, 2016, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(AR 17-24.)

### III. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

### IV. DISCUSSION AND CONCLUSIONS OF LAW

**A. Standard of Review**

The determination of disability under the Act is an administrative decision. The only questions before this Court upon judicial review are: (i) whether the decision of the Commissioner is supported by substantial evidence, and (ii) whether the Commissioner made legal errors in the process of reaching the decision. 42 U.S.C. § 405(g). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hargett*

3

*v. Comm'r of Soc. Sec.*, 964 F.3d 546, 551 (6th Cir. 2020) (internal citations omitted). If substantial evidence supports the ALJ's decision, that decision will be affirmed "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). In other words, the ALJ's decision must be affirmed if his or her "findings and inferences are reasonably drawn from the record or supported by substantial evidence even if that evidence could support a contrary decision." *Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 395 (6th Cir. 2010).

The Commissioner utilizes a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a). If the issue of disability can be resolved at any point during the evaluation, the ALJ does not proceed to the next step and the claim is not reviewed further. *Id*. First, if the claimant is engaged in substantial gainful activity, she is not disabled. *Id.* Second, the claimant is not disabled if she does not have a severe medically determinable impairment that meets the 12-month durational requirements. *Id.* Third, the claimant is presumed disabled if she suffers from a listed impairment, or its equivalent, for the proper duration. *Id.* Fourth, the claimant is not disabled if, based on her residual functional capacity ("RFC"), she can perform past relevant work. *Id.* Fifth, if the claimant can adjust to other work based on her RFC, age, education, and work experience, she is not disabled. *Id.* The claimant bears the burden of proof through the first four steps, while the burden shifts to the Commissioner at step five. *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

The Court's review of the Commissioner's decision is limited to the record made during the administrative hearing process. *Jones v. Berryhill*, 392 F. Supp. 3d 831, 843 (M.D. Tenn. 2019) (citing *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991)). A

4

reviewing court is not permitted to try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (citing *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)).

### B. The ALJ's Five-Step Evaluation of Plaintiff

In the instant case, the ALJ resolved Plaintiff's claim at step four of the five-step process. The ALJ found that Plaintiff met the requirements of the first two steps but found at step three that Plaintiff was not presumptively disabled because she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. At step four, the ALJ found that Plaintiff was able to perform past relevant work as a receptionist and was therefore not disabled. (AR 17-24.)

### C. Plaintiff's Assertions of Error

Plaintiff presents two assertions of error: (1) that the ALJ failed to properly evaluate the opinions provided by Plaintiff's treating psychiatrist and nurse practitioner; and (2) that the ALJ failed to properly evaluate Plaintiff's subjective complaints about the severity of her symptoms. (Docket No. 23-1 at 10-20.) Plaintiff therefore requests that the Commissioner's decision be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for additional consideration. (*Id*. at 20.)

Sentence four of 42 U.S.C. § 405(g) states the following:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

If the case contains an adequate record, "the [Commissioner's] decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Hudson-Kane v. Berryhill*, 247 F. Supp. 3d 908, 914 (M.D. Tenn. 2017) (quoting *Mowery v. Heckler*, 771

5

F.2d 966, 973 (6th Cir. 1985)). However, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Holtman v. Saul*, 441 F. Supp. 3d 586, 609 (M.D. Tenn. 2020) (quoting *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994)). The Court addresses Plaintiff's assertions of error below.

**1. Opinion Evidence.**

Plaintiff first argues that the ALJ improperly evaluated the opinions provided by Dr. Raju Indukuri, Plaintiff's treating psychiatrist, and Megan Snider, Plaintiff's treating nurse practitioner. The ALJ found that each of these opinions was "not persuasive" and thus declined to adopt the functional limitations recommended therein. (AR 23-24.) Plaintiff claims that this decision represents reversible error, and she cites a number of records in support of her assertion that the ALJ failed to adequately assess the supportability and consistency of the opinions in violation of governing regulations.

An ALJ's analysis of a medical opinions issue in connection with an application for disability filed after March 27, 2017, such as the current one, is governed by 20 C.F.R. § 404.1520c.[3] Under this regulation, the ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)," but is instead directed to consider the "persuasiveness" of the medical opinions based on five categories that include supportability, consistency, the provider's relationship with the claimant, the provider's specialization, and other factors such as familiarity with the disability program's policies. *Id.* § 404.1520c(a)-(c). The two most important factors in the ALJ's evaluation are supportability and consistency. *Id.* § 404.1520c(a).

---

[3] The corresponding regulation for SSI applications is contained in 20 C.F.R. § 416.920c. For ease of reference, the Court will refer only to the relevant DIB regulatory language.

6

Dr. Indukuri issued his opinion on February 16, 2018, via a form medical source statement ("MSS") that asks the provider to opine on the severity of the claimant's alleged mental impairments. Dr. Indukuri identifies Plaintiff's impairments as "depression, inattention, anxiety attacks," although he cites only depression as the cause of Plaintiff's purported inability to "attend[] an 8-hour per day, 40-hour work week, week after week[.]" (AR 601.) The MSS then asks the provider to evaluate Plaintiff's capacity in 22 areas of mental functioning, to which Dr. Indukuri responded that Plaintiff has a "fair" ability (defined as an ability to perform the subject task that is "usually satisfactory, but at times is limited or precluded") to maintain personal appearance, relate to peers, and use judgment, but a "poor" ability (defined as being "usually precluded" from performing the subject task) in the remaining 19 mental areas, including the ability to perform activities of daily living independently, interact appropriately with others, maintain concentration, persistence, and pace, deal with the stress of ordinary work, and complete tasks. (AR 602-03.)[4] When prompted to describe any medical or clinical findings to support this assessment — including "objective measures" or "medical records review" — Dr. Indukuri stated only: "due to depression, cognitive impairment, inattention, panic attacks." (AR 603.)

Ms. Snider's opinion pertains to Plaintiff's physical impairments and also comes in the form of an MSS, dated March 21, 2018, although it is only a partial evaluation of Plaintiff's physical abilities. Ms. Snider lists Plaintiff's lone physical impairment as "polymyalgia rheumatica," but she failed to complete any of the accompanying requests for specific opinions regarding Plaintiff's functional capacity. For example, like Dr. Indukuri, Ms. Snider claims that Plaintiff is unable "attend[] an 8-hour per day, 40-hour work week, week after week," but she does not identify any restrictions with respect to sitting, walking, standing, lifting, carrying, bending,

---

[4] The scale utilized in the MSS, from least to most severe, includes "unlimited," "good," "fair," "poor," and "none." (AR 601.)

pushing, or pulling. (AR 605.) Ms. Snider also claims that Plaintiff's condition will cause "moderately severe" pain, but she fails to explain the practical effect of this condition by answering a follow-up question regarding how many breaks Plaintiff would need to take as a result of such pain. (AR 605-06.) And when prompted to identify medical support for her opinion, Ms. Snider checked a box that says only: "Objective evidence supporting my opinion exists in my treatment notes." (AR 607.)

The ALJ effectively rejected both opinions. Regarding Dr. Indukuri's mental MSS, the ALJ concluded that it was not supported by objective medical evidence, including Dr. Indukuri's own clinical findings showing intact long and short term memory, normal judgment and perceptions, and normal thought processes and content. (AR 23-24.) The ALJ also highlighted Dr. Indukuri's description of Plaintiff's symptoms as "mild" on numerous occasions, as well as Plaintiff's ability to perform various mental functioning exercises accurately. (AR 23-24.) In dismissing the physical MSS, the ALJ simply noted that Ms. Snider's opinion failed to include any functional analysis of the Plaintiff's ability to work. (AR 23.)

The Court finds that substantial evidence supports the ALJ's assessment of the medical opinion evidence. In support of her claim that the ALJ failed to evaluate the supportability and consistency of Dr. Indukuri's opinion, Plaintiff cites an office note from August 2016 during which she complained of "work difficulty, increased worry, difficulty concentrating, and panic attacks." (Docket No. 23-1 at 13.) Yet the mental status examination performed during this visit yielded entirely normal findings with respect to affect, behavior, coherence, orientation, memory, fund of knowledge, judgment, impulsivity, thought processes, thought content, and reasoning. (AR 506.) These normal mental findings were documented throughout the duration of her treatment with Dr. Indukuri (AR 510, 512, 522-23, 525-27), and are consistent with Dr. Indukuri's repeated

description of Plaintiff's symptoms as "mild," as discussed by the ALJ. (AR 23-24, 514, 522, 525.) The normal findings were also present even during the two occasions that Plaintiff described her symptoms as "moderate" (AR 526), and thus appear to undermine the Dr. Indukuri's suggestion that Plaintiff is unable to perform activities of daily living independently, behave in an emotionally stable manner, or follow work rules. (AR 602-03.)

Additionally, Dr. Indukuri identifies "panic attacks" as a basis for his recommended functional restrictions (AR 603), but the only evidence of panic attacks in the administrative record is found in Plaintiff's initial encounter with Dr. Indukuri in August 2016, when she described her own symptoms as: "work difficulty, increased worry, [difficulty] concentrating, panic attacks." (AR 505.) There is no discussion of panic attacks in any of her subsequent visits with Dr. Indukuri, nor did she testify during the administrative hearing that she experiences panic attacks. And as discussed above, Plaintiff demonstrated almost entirely normal mental functioning during every documented office visit with Dr. Indukuri. (AR 506, 508-10, 512, 522-23, 525-27.)

Moreover, the ALJ discussed Plaintiff's ability to accurately interpret proverbs, perform simple calculations, respond to serial sevens tests, and recognize similarities and differences – again documented in Dr. Indukuri's own office notes (AR 23-24, 510, 512, 522-23, 525-27) – which is at odds with Dr. Indukuri's finding that Plaintiff is "usually precluded" from understanding, remembering, or carrying out even simple instructions (AR 602), and thus supportive of the ALJ's decision to discount the opinion. *See Gant v. Comm'r of Soc. Sec.*, 372 F. App'x 582, 584 (6th Cir. 2010) ("Because the record adequately supports the finding that Dr. Watson's medical opinion was not supported by her own treatment notes and was inconsistent

with the record as a whole, the ALJ was warranted in discrediting her opinion.").[5] The inconsistency of the MSS is compounded by Dr. Indukuri's failure to provide any meaningful explanation or clinical support for his conclusions, which renders the opinion "weak evidence at best." *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 474 (6th Cir. 2016).

Plaintiff's argument with respect to Ms. Snider's MSS is similarly unavailing. Plaintiff notes that while the MSS does not include any opinion as to her physical functional capacity, Ms. Snider did indicate that Plaintiff could not be reasonably expected to attend a normal workday for any extended period of time. (AR 605.) Yet an assertion about a claimant's ability to perform full time work that fails to provide any specifics as to what actual limitations the claimant is subject to does not constitute a "medical opinion," which is defined as "a statement from a medical source about what you can still do despite your impairment(s) …." 20 C.F.R. § 404.1513(a)(2). Indeed, such a declaration without any accompanying explanation or medical support is meaningless in the Social Security context, and the ALJ was under no obligation to scrutinize the statement any more than she did. *See Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 441 (6th Cir. 2010) ("[T]he ALJ is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation.").

The ALJ in this case properly discussed the consistency and supportability of the two opinions at issue, in compliance with 20 C.F.R. § 404.1520c(a), by highlighting the absence of clinical support for the severity of the restrictions proposed by Dr. Indukuri, the inconsistency of his opinion with his own clinical findings, and the lack of any actual medical opinion in Ms. Snider's MSS. Even if the ALJ had failed to provide an adequate explanation as to

---

[5] The Court also questions the consistency of Dr. Indukuri's finding that Plaintiff has the exact same ability ("poor") to understand, remember, and carry out: (1) complex instructions; (2) detailed, but not complex, instructions; and (3) simple instructions. (AR 602.)

persuasiveness, these MSS reports include no meaningful support for their respective conclusions, thus providing little value to the ALJ's analysis. *See Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 441 (6th Cir. 2017) (describing a provider's medical opinion that "provided no supporting findings or records and consisted largely of one word answers, circles, and check-marks" as "patently deficient") (internal citations omitted). The ALJ instead relied on medical opinions provided by state agency physicians in formulating the assigned RFC (AR 23), and Plaintiff does not challenge the ALJ's weighing of these opinions. (Docket No. 25 at 2.) Accordingly, the Court finds no reversible error in the ALJ's discussion of the medical opinion evidence.

**2. Plaintiff's Subjective Statements.**

Plaintiff's second assertion of error involves the ALJ's evaluation of her subjective statements regarding the severity of her symptoms. Pursuant to Social Security Ruling ("SSR") 16-3p, an ALJ is required to consider a claimant's "statements about the intensity, persistence, and limiting effects of the symptoms" and "evaluate whether the statements are consistent with objective medical evidence and other evidence." 2017 WL 5180304, at *6 (October 25, 2017). The ALJ's evaluation is based on seven factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the alleged pain or other symptoms; (3) any precipitating or aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant uses; (5) the claimant's non-medication treatment; (6) any measures other than treatment the claimant employs to relieve pain or other symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. *Id*. at *7-8 (citing 20 C.F.R. § 404.1529(c)(3)).

SSR 16-3p's predecessor, SSR 96-7p, required the ALJ to make a "credibility" determination based on the claimant's statements about the limiting effects of her alleged

symptoms. 1996 WL 374186, at *3 (July 2, 1996). Although the Commissioner removed the term "credibility" in its implementation of SSR 16-3p, there is no substantive change in the ALJ's analysis and nothing to suggest that case law pertaining to credibility evaluations under SSR 96-7p has been abrogated. *See Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016) (noting that SSR 16-3p removed the term "credibility" to "clarify that subjective symptom evaluation is not an examination of an individual's character"). Reviewing courts are thus still required to accord "great weight and deference" to an ALJ's determination regarding the consistency of a claimant's allegations, *Calvin v. Comm'r of Soc. Sec.*, 437 F. App'x 370, 371 (6th Cir. 2011), and a claimant seeking to overturn the ALJ's decision continues to "face an uphill battle." *Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 488 (6th Cir. 2005).

The ALJ in this case found that Plaintiff's allegations about the limiting effects of her symptoms were inconsistent with the evidence of record, including imaging reports, mental status examinations, and Plaintiff's prior statements regarding the extent of her pain. (AR 20.) Specifically, the ALJ referenced "mild/minimal" findings derived from x-rays of her knee and back, "unremarkable" mental findings noted during clinical examinations, and Plaintiff's rating of her pain as "4-5/10" at various times during the relevant time period. (AR 20.) Plaintiff challenges this determination by citing records documenting her previous complaints to providers about hand and knee pain, as well as her testimony during the administrative hearing that she experiences ongoing anxiety and fits of rage, to argue that the ALJ failed to "provide clear and convincing reasons" for dismissing her subjective statements in formulating the RFC. (Docket No. 23-1 at 17.)

The Court finds that substantial evidence supports the ALJ's evaluation of Plaintiff's subjective complaints. The ALJ properly highlighted both the "minimal" degenerative changes noted in Plaintiff's lumbar spine in April 2017 and September 2018 and the "mild" degenerative

12

changes noted in her right knee in September 2018 (AR 438, 464, 638, 644), which are inconsistent with Plaintiff's claim that she is unable to move or put weight on her right knee. (AR 41, 45.) These are appropriate considerations under the relevant regulation. *See* 20 C.F.R. § 404.1529(c)(3) ("We will consider your statements about the intensity, persistence, and limiting effects of your symptoms, and we will evaluate your statements in relation to the objective medical evidence and other evidence, in reaching a conclusion as to whether you are disabled."). The ALJ also discussed the relatively conservative treatment recommended by providers, including diet and exercise (AR 21, 436, 480), which similarly weighs against her complaints of disabling pain. *See Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 473 (6th Cir. 2014) ("Had Curler suffered from severe pain associated with her back condition, the medical records would have revealed severe back or leg abnormalities, abnormal functioning on physical exams, recommendations for more aggressive treatment, and more significant doctor-recommended functional limitations.")

The ALJ also highlighted the absence of any significant mental findings in the records documenting her visits with Dr. Indukuri (AR 21, 23-24), as was appropriate. *See Conner v. Comm'r of Soc. Sec.*, 658 F. App'x 248, 254 (6th Cir. 2016) ("The ALJ sufficiently explained that Dr. Freeland's records failed to reveal the type of significantly abnormal findings that would qualify a patient as disabled."). Additionally, while Plaintiff testified that she frequently calls Dr. Indukuri when she "go[es] into a fit of rage" and "black[s] out" before becoming violent (AR 36-39), there is simply nothing in Dr. Indukuri's notes to substantiate these claims, which is a significant omission given her testimony that she sees him every month. (AR 37.) As discussed, Dr. Indukuri instead describes Plaintiff as having normal judgment, perceptions, impulsivity, thought processes, and thought content. (AR 527.)

Although Plaintiff references records documenting her past complaints about pain and bouts of anxiety, she does not challenge any of the evidence cited by the ALJ, which is fatal to her argument. *See Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 540 (6th Cir. 2014) ("Merely marshalling evidence to suggest that he is disabled, however, is insufficient; to prevail on appeal, Peterson must demonstrate that the ALJ's determination that he was not disabled is not supported by substantial evidence."). Because the ALJ cited ample evidence to support her determination regarding the consistency of Plaintiff's allegations, and in light of the deferential standard applied to such determinations, *see Hernandez*, 644 F. App'x at 476 ("While in theory we will not disturb an ALJ's credibility determination without a compelling reason, in practice ALJ credibility findings have become essentially unchallengeable.") (cleaned up) (internal citations omitted), the Court concludes that the ALJ's decision is supported by substantial evidence. This assertion of error is therefore rejected.

## V. RECOMMENDATION

For all these reasons, it is respectfully RECOMMENDED that Plaintiff's motion for judgment on the administrative record (Docket No. 23) be DENIED and the Commissioner's decision be affirmed.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(a). Failure to file specific written objections within the specified time can be deemed to be a waiver of the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Milton*, 380 F.3d 909, 912 (6th Cir. 2004)

(en banc). Any responses to objections to this Report and Recommendation must be filed within 14 days of the filing of the objections. *See* Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(b).

Respectfully submitted,

_____
BARBARA D. HOLMES
United States Magistrate Judge