IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| STEPHANIE MITCHELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | NO. 3:21-cv-00408 |
| v. ) | JUDGE RICHARDSON |
| ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

**Memorandum Opinion and Order**

Pending before the Court is Plaintiff's motion for judgment on the administrative record (Doc. No. 23). On July 25, 2022, the Magistrate Judge issued a Report and Recommendation ("R&R"), in which the Magistrate Judge recommended that Plaintiff's motion be denied. (Doc. No. 26). Plaintiff filed objections to the R&R. (Doc. No. 27). Defendant did not file a response.

When a Magistrate Judge issues a report and recommendation regarding a dispositive pretrial matter, the district court must review *de novo* any portion of the report and recommendation to which a proper objection is made. Fed. R. Civ. P. 72(b)(3). The district judge may accept, reject, or modify the recommended disposition, review further evidence, or return the matter to the magistrate judge with instructions. *Id*. Fed. R. Civ. P. 72(b)(2) provides that a party may file "specific written objections" to a report and recommendation, and Local Rule 72.02(a) provides that such objections must be written and must state with particularity the specific

portions of the Magistrate Judge's report or proposed findings or recommendations to which an objection is made.[1]

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(3), the Court has reviewed the Report and Recommendation, the Objections, and the file. For the reasons set forth below, the Objections of the Plaintiff are overruled, and the Report and Recommendation is adopted and approved.

## BACKGROUND[2]

The allegations and relevant procedural history are adequately stated in the R&R and need not be repeated in full here. The Court, however, provides below a brief overview of the same here for the purposes of resolving Plaintiff's motion.

Plaintiff filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the Social Security Administration's denial of her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") as provided under Titles II and XVI, respectively, of the Social Security Act. (Doc. No. 26 at 1). Plaintiff alleges that she became unable to work beginning on August 12, 2016 due to vision problems, irregular hormone levels, polymyalgia rheumatica, knee pain, diabetes, attention-deficit hyperactivity disorder ("ADHD"), bipolar disorder, anxiety, and depression. (*Id.* at 2). Plaintiff filed for DIB on March 16, 2018 and for SSI on August 7, 2018, but both applications were denied initially and upon reconsideration. (*Id.*). Upon her request, the ALJ held a hearing, and thereafter denied her claim. (*Id.*). The Appeals

---

[1] The Local Rule also provides that any objections must be accompanied by sufficient documentation including, but not limited to, affidavits, pertinent exhibits, and if necessary, transcripts of the record to apprise the District Judge of the bases for the objections. Local Rule 72.02(a). Also, a separately filed supporting memorandum of law must accompany the objections. *Id.* Plaintiff did not file her objections separately from a memorandum of law in support of those objections, and instead filed one document (which the Court has dubbed "[the] Objections") in response to the R&R.

[2] The facts set forth herein are taken primarily from the R&R and are undisputed unless otherwise stated.

Council denied Plaintiff's request to review the ALJ's decision, rendering the ALJ's decision the final decision of the Commissioner and fit for this Court's review upon Plaintiff's filing of this action. (*Id.*).

As explained by the Magistrate Judge, the Commissioner has a five-step sequential evaluation process for determining whether a claimant is disabled:

(i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. []

(ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. []

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled. []

(iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. See paragraphs (f) and (h) of this section and § 404.1560(b).

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

(*Id.* at 4 (citing 20 C.F.R. § 404.1520(a)).

As explained by the Magistrate Judge, the ALJ found that Plaintiff was not presumptively disabled at step three because she did not have an impairment or combination of impairments that met or medically equals the severity of those listed in 20 C.F.R. Part 404, Appendix 1. (Doc. No.

26 at 5). The Magistrate Judge goes on to explain that the ALJ then found that Plaintiff was not disabled because she is able to perform past relevant work as a receptionist. (*Id.*).

LEGAL STANDARD

The ultimate questions before a district court in reviewing a decision by an ALJ are whether the ALJ's determination was supported by substantial evidence and whether the ALJ applied the correct legal standards. *Shelton v. Saul*, No. 2:18-cv-00093, 2020 WL 1284628, at *2 (M.D. Tenn. Mar. 18, 2020) (citing 42 U.S.C. § 405(g)). The court conducts its review under a "highly deferential" substantial-evidence standard. *Jones v. Berryhill*, 392 F. Supp. 3d 831, 838 (M.D. Tenn. 2019). The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

Under the "substantial evidence" standard, a court looks to an existing administrative record and asks whether it contains "sufficient evidence" to support the agency's factual determinations. *Biestek*, 139 S. Ct. at 1154. And, whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. *Id.* Substantial evidence is "more than a mere scintilla" and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.*; *Shelton*, 2020 WL 1284628, at *2; *see also Rottman v. Comm'r of Soc. Sec.*, No. 19-2205, slip op. at 3 (6th Cir. June 19, 2020). The standard amounts to "less than a preponderance of the evidence," and is met even if the record could reasonably support the opposite conclusion. *Brown v. Comm'r of Soc. Sec.*, 814 F. App'x 92, 95 (6th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Therefore, if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Jones*, 392 F. Supp. 3d at 838 (quoting *Blakley v.*

*Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)). Additionally, even if the ALJ makes a factual error while reaching her conclusion, the reviewing court will deem the error harmless and uphold the ALJ's decision "[s]o long as there remains substantial evidence supporting the ALJ's conclusions" and the error does not negate the validity of the ALJ's ultimate conclusion. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012).

DISCUSSION

**Objection 1**

Plaintiff argues that the Magistrate Judge's conclusion that the ALJ's residual function capacity ("RFC") decision was supported by substantial evidence is incorrect. (Doc. No. 27). Specifically, Plaintiff asserts that the ALJ did not properly articulate the importance of supportability and consistency in weighing the medical opinions offered at the hearing. (Doc. No. 27 at 2). Plaintiff further faults the ALJ for finding that the opinion of Dr. Indukuri, Plaintiff's treating psychiatrist, was not persuasive.[3] (*Id.*). In Plaintiff's view, the ALJ selectively read the administrative record to support his conclusions. (*Id.*).

As correctly articulated by the Magistrate Judge, C.F.R. § 404.1520c(a) states that the Commission will not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). The regulation further states that:

> When a medical source provides one or more medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in paragraphs (c)(1)

---

[3] The caption of Plaintiff's first objection suggests that Plaintiff intends also to challenge the Magistrate Judge's consideration of how the ALJ evaluated Megan Snider's opinion. (Doc. No. 27 at 1). However, Plaintiff provides no argument in her objections as to how the Magistrate Judge improperly evaluated the ALJ's consideration of Ms. Snider's opinion. Therefore, the Court declines to construe Plaintiff's objection as raising an issue as to the Magistrate Judge's consideration of the ALJ's evaluation of Ms. Snider's opinion.

> through (c)(5) of this section, as appropriate. *The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability* (paragraph (c)(1) of this section) *and consistency* (paragraph (c)(2) of this section). We will articulate how we considered the medical opinions and prior administrative medical findings in your claim according to paragraph (b) of this section.

*Id.* (emphasis added). In her objection, Plaintiff contends that the ALJ was wrong to focus on the fact that Dr. Indukuri "wrote that Plaintiff's symptoms were mild, and she had normal long term and short-term memory with normal perception." (Doc. No. 27 at 2). Plaintiff argues that this is an "overly concise" and "selective reading of the record." (*Id.*). Significantly, Plaintiff does not point the Court to any part of the record that stands in contrast with these observations by Dr. Indukuri, so as to suggest that the ALJ focused on cherry-picked pro-Defendant observations to the exclusion of countervailing pro-Plaintiff observations by Dr. Indukuri. In any event, the Court has reviewed the ALJ's decision and finds that it is supported by substantial evidence.

The ALJ carefully reviewed the medical opinions in this case. The decision reflects that the ALJ agreed with several of the opinions of Plaintiff's treating physicians. (Doc. No. 18 at 27). Dr. Indukuri, however, had provided an opinion that was inconsistent with his own treatment notes and with the objective medical evidence on the record. (*Id.*). Dr. Indukuri determined that Plaintiff had "poor use of ability to perform activities of daily living, social functioning, concentration, persistence and pace in adaptation." (*Id.* at 26). And he determined that based on these observations and Plaintiff's depression, cognitive impairments, inattention, and panic attacks, Plaintiff could not be expected to work a traditional 40-hour work week. (*Id.*). The ALJ rejected these determinations of Dr. Indukuri's, however, explaining that Dr. Indukuri's own mental status examinations demonstrate that Plaintiff was able to "interpret proverbs, perform simple calculations, respond to serial sevens tests, and recognize similarities and differences." (*Id.* at 27–

28 (citing Exhibit 5F)). The ALJ also pointed out that Dr. Indukuri's notes reflect that Plaintiff's inattention was mild. (*Id.* 28).

As discussed above, the governing regulations require ALJs to consider supportability and consistency—as the most important factors, no less—in weighing the persuasiveness of medical opinions. And that is exactly what the ALJ did here with respect to Dr. Indukuri's opinion. The Court finds that the ALJ properly considered the factors of supportability and consistency in considering Dr. Indukuri's opinion, and that the RFC decision was supported by substantial evidence. Plaintiff's objection is therefore overruled.

## **Objection 2**

Plaintiff next objects to the Magistrate Judge's conclusion that there was substantial evidence to support the ALJ's rejection of Plaintiff's testimony regarding her symptoms. (Doc. No. 27 at 3). Plaintiff contends that ALJs cannot merely provide blanket assertions that a claimant is not believable to support denial of benefits. (*Id.*).

As the Magistrate Judge explains, an ALJ is required to consider a claimant's statements "about the intensity, persistence, and limiting effects of the symptoms" and "evaluate whether the statements are consistent with the objective medical evidence and other evidence." (Doc. No. 26 at 11 (quoting SSR-16 3, 2017 WL 5180304, at *5 (Oct. 25, 2017)). The ALJ relies on seven factors in its evaluation:

> 1. Daily activities; 2. The location, duration, frequency, and intensity of pain or other symptoms; 3. Factors that precipitate and aggravate the symptoms; 4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*See* SSR-16 3, 2017 WL 5180304, at *5 (Oct. 25, 2017)). Further, as explained in detail by the Magistrate Judge, although the regulations no longer contain the word "credibility" to describe how ALJs should evaluate the claimant's statements, courts have interpreted this alteration of the regulation as merely noting that the ALJ's evaluation of the claimant's testimony is not meant as an examination claimant's character; the alteration does not prevent the ALJ from making a reasonable determination of the reliability of the claimant's testimony considering additional evidence on the record. (Doc. No. 26 at 12). In other words, ALJs are still permitted to make reliability determinations regarding claimant's statements regarding their symptoms.

In her second objection, Plaintiff explains that she testified to her knee pain brought on by arthritis. (Doc. No. 27 at 3). She also discusses the tingling in her hands and arms caused by her fibromyalgia, and the difficulties that she experiences in moving her extremities on account of the pain. (*Id.*). In terms of performing daily functions, Plaintiff explains that she testified that these issues prevent her from being able to type and climb stairs (*Id.*). The ALJ, however, found that Plaintiff's statements at the hearing were "not entirely consistent with the medical evidence and other evidence in the record . . . ." (Doc. No. 18 at 24). The ALJ pointed out the "overwhelming imaging and x-rays of the right knee and lumbar spine reveal only mild/minimal findings throughout the medical evidence of record." (*Id.*). Further, as explained by the ALJ, the record reflects that as recent as February 2019, Plaintiff ranked her pain as low as a 4 to 5 out of 10 and as "unremarkable on mental status examination." (*Id.*). In late February, Plaintiff was evaluated by a physical therapist for difficulties with her right knee, and it was noted that her "rehab potential was excellent . . . ." (*Id.* at 25).

Although Plaintiff attempts to direct the Court to other parts of the record to support her statements that she suffers from hand and knee pain, the substantial evidence standard requires the

Court to determine whether the ALJ had sufficient evidence to support the conclusion to deny Plaintiff's DIB request. In other words, even if Plaintiff can identify information in the record that could lead reasonable minds to disagree as to the ALJ's conclusion—and indeed even if the undersigned on balance were to disagree with the ALJ's conclusion—this is insufficient under the substantial evidence standard to overturn the Magistrate Judge's, and in turn, the ALJ's decision. And as the Magistrate Judge points out, Plaintiff does not challenge "any of the evidence cited by the ALJ, which is fatal to her argument." (Doc. No. 26 at 14).

The ALJ properly relied on contradicting evidence in the record to discount the reliability of Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms. The Magistrate Judge therefore was correct to find that substantial evidence supports the ALJ's decision. Plaintiff's objection is thus overruled.

## CONCLUSION

For the reasons discussed herein, Plaintiff's objections are overruled, and the Court adopts the Magistrate Judge's Report and Recommendation. (Doc. No. 26). Accordingly, Plaintiff's motion for judgment on the administrative record (Doc. No. 23) is **DENIED**.

This is the final order in this case. All relief being denied, the Clerk of the Court is ordered to enter final judgment under Federal Rule of Civil Procedure 58.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE